# Richmond.

## NORFOLK AND WESTERN RAILWAY CO. v. RHODES.

### January 14, 1909.

1. CARRIERS—*Injury to Passenger—Presumption of Negligence.*—Where
an injury to a passenger is caused by the derailing of a train,
by a collision or by other accident to the car in which the passen-
ger is riding, the happening of the accident is *prima facie* evi-
dence of negligence on the part of the carrier, and if the passen-
ger is free from negligence, the burden is on the carrier to
show that it performed its whole duty, and that the injury was
unavoidable by the exercise of human care and foresight.

2. CARRIERS—*Injury to Passenger—Negligence—Sufficiency of Declara-
tion.*—In an action by a passenger against a carrier for a per-
sonal injury, a declaration which simply charges in different
counts that the defendant was negligent in the operation of its
train, that it did not have a proper road-bed or track, and that
its locomotive, cars and coaches were defective, is not sufficient,
but if, in addition, there are charged in each count such facts
and circumstances attending the injury, as show that the move-
ment of the train was so unusual and extraordinary as to break
the plaintiff loose from his hold on the water-closet, and that
the accident could not well have happened without negligence
on the part of the carrier, the declaration is sufficient, as a
*prima facie* presumption is raised of negligence on the part of
the carrier.

3. APPEAL AND ERROR—*Bills of Exception—Incorporation of Evidence—
Identification of Evidence.*—A bill of exception which, after cer-
tifying that the plaintiff and defendant each introduced evi-
dence, says "all of which evidence, both for the plaintiff and the
defendant, is found in a typewritten booklet now marked 'A,'
and is adopted by the court as the evidence introduced by the
plaintiff and the defendant," and that it contains all the evi-
dence offered by them, sufficiently identifies the evidence and
makes it a part of the record of the case.

4. CARRIERS—*Injury to Passenger—Lurching of Train—Negligence— Presumption—Accident.*—In the absence of any evidence, direct or indirect, of negligence on the part of a carrier in the selection or retention of its servants, or in respect to its appliances or road-bed, and where there is no evidence of excessive speed except the opinion of witnesses who testify to no facts which show extraordinary or unusual speed, it will not be presumed that the carrier was negligent; and the fact that a passenger, walking along the aisle of a coach, is thrown to the floor by the lurching of the train while passing rapidly over a curve in the road must be deemed to be an accident for which no one is responsible. The danger of such an accident is one of the risks which the passenger assumes. While a carrier of passengers is liable for injuries resulting from the slightest negligence on its part, it is not an insurer of the safety of its passengers.

Error to a judgment of the Circuit Court of Botetourt county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Theodore W. Reath, Marshall McCormick* and *E. M. Pendleton,* for the plaintiff in error.

*Glasgow & White* and *W. S. Hopkins,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover damages for personal injuries suffered while the plaintiff (the defendant in error) was being carried as a passenger by the Norfolk and Western Railway Company.

The action of the court in overruling the demurrer to the amended declaration is assigned as error.

The objection made to the declaration is that it does not

state the facts relied on to show that the defendant company was guilty of negligence.

The first count charges, generally, that the defendant was negligent in the operation of its train; the second, that it did not have a proper roadbed or track, and the third, that its locomotive, cars, and coaches were defective. It is true that it is not alleged in what particular or respect the defendant failed to operate its train properly, or what the defect in its roadbed, track, locomotive, cars or coaches was, but each count contains the following averment:

"* * * that defendant did not use due and proper care as the law required, and while the plaintiff was on said car and was standing by the water closet, using at the time due and ordinary care, and was holding on to the side of the water closet and about to open the door, and by its negligence, carelessness and default in failing to operate, manage, and run its said steam locomotive, car or coach, at and between the said points mentioned, caused and permitted its said car or coach to be violently jerked, turned and thrown to one side with a lurch, said jerking, turning and lurching being in a most violent, dangerous, and unusual and negligent manner, and so violent, unusual and unexpected as to break the plaintiff loose from his hold on the water closet and throw him first in one direction and then in another down and against the seat of the car and break his cheek bone."

The general rule is that the happening of an injurious accident is, in passenger cases, *prima facie* evidence of negligence on the part of the carrier, and that (the passenger himself being in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human care and foresight. *B. & O. R. Co.* v. *Wightman,* 29 Gratt. 431, 26 Am. Rep. 384; *Same* v. *Noel,* 32 Gratt. 394; *Gleason* v. *Virginia Mid. &c. R. Co.,* 140 U. S. 435, 443, 35 L. Ed. 458, 11 Sup. Ct. 859;

2 Cooley on Torts, pp. 1415-1419; 3 Hutchinson on Carriers, secs. 1413, 1414.

This seems to be the universal rule where the injury is caused by the derailing of the train, by a collision or other accident to the car in which the passenger is riding. See authorities cited above.

Whether or not, when an injury to a railway passenger is shown, the cause of which is not at once apparent, there is a presumption that the injury was due to some want of care in the carrier or its agents or servants, need not be considered, since the facts and circumstances attending the injury, as charged in the declaration, show that the movement of the train was so unusual and extraordinary as to break the plaintiff loose from his hold on the water closet, and that the accident could not well have happened without negligence on the part of the carrier, and, therefore, raise a *prima facie* presumption of negligence on its part. See Hutchinson on Car., sec. 1414; 2 Cooley on Torts, pp. 1417-1421; 4 Elliott on Railroads, sec. 1644; *Burr* v. *Penn. R. Co.,* 64 N. J. L. 30, 44 Atl. 845; *Hite* v. *Metropolitan St. Ry. Co.,* 130 Mo. 132, 31 S. W. 262, 51 Am. St. Rep. 555; *Slovely* v. *Detroit, &c. Ry. Co.,* 124 Mich. 420, 83 N. W. 26.

The other assignments of error are based upon five bills of exceptions, none of which it is insisted by the plaintiff are properly parts of the record. In the view we take of the case, it is unnecessary to consider these objections, except so far as they apply to bill of exceptions numbered five.

The verdict of the jury was rendered at the December term, 1907, of the court. At that term the order of the court shows that a motion was made to set aside the verdict, and time taken until the next term by the court for its decision. At the next term (March, 1908) the order of the court shows that it over-ruled the motion to set aside the verdict, entered a final judgment and granted leave to the defendant "to tender its bill of

exceptions to the judge of this court in vacation within thirty days after the end of this term, which bill of exceptions, when signed, shall be a part of the record in this cause." The bill of exceptions No. 5, which it is claimed was signed by the judge pursuant to that order, contains the following statement: "Be it remembered, that on the trial of this case, on the        day of December, 1907, the plaintiff, in order to maintain the issue on his part introduced the following evidence (here insert it). And the defendant, to maintain the issue on his part, introduced the following evidence (here insert it) ; all of which evidence, both for the plaintiff and the defendant is found in a typewritten booklet now marked 'A' and is adopted by the court as the evidence introduced by the plaintiff and the defendant. and the court certifies that the said booklet 'A' contains all the evidence that was offered by the plaintiff and defendant." After stating what was done in submitting the case to the jury, which resulted in a verdict and the motion to set it aside, it concludes as follows: "To which action of the court in refusing to set aside the verdict of the jury and grant the defendant a new trial, the defendant company excepted, and prayed that this its bill of exception might be signed, sealed and made a part of the record, which is accordingly done." It was signed, sealed and dated March 14, 1908.

The principal objection made to this bill of exception is, that it does not sufficiently identify and make the evidence contained in booklet "A" a part of the record.

The question of what is and what is not a sufficient identification of the evidence referred to in a bill of exception, so as to make it a part of the record, has so frequently in recent years been before this court and discussed by it that it is unnecessary to reiterate what has been said on the subject. It is sufficient to say, that we are of opinion that the evidence was sufficiently identified and made a part of the record in this case. See *Blackwood, &c. Co.* v. *James' Admr.,* 107 Va. 656, 60 S. E.

90; *Jeremy Imp. Co.* v. *Com'th*, 106 Va. 482, 56 .S. E. 224; *Kecoughtan Lodge, &c.* v. *Steiner*, 106 Va. 589, 56 S. E. 569; *U. S. Mineral Co.* v. *Camden, &c.*, 106 Va. 663, 56 S. E. 561, 117 Am. St. Rep. 1028.

It appears that the plaintiff was a passenger on the defendant's train, and received the injury complained of in going from his seat to the water closet, which was near by.   He testified that as he got up from his seat to start to the closet the train "lunged" or "rocked" over towards and threw him against the closet door, and that it lunged or rocked back the other way, and not being able to catch hold of anything he fell and struck the back of the seat.   He further testified that it seemed to him that the movement at the time he was injured was unusual and extraordinary, because it threw him forward and backward as it did; and that he had had no trouble before this in going through the trains upon which he had traveled.

The plaintiff introduced a witness named Johnson, who described the manner in which the plaintiff was injured as follows:

"Q. Just state how he went to the closet, and how he was thrown, and all about it.  A. He started to the door, and the train rocked, and he fell, and it threw him against the door, and then he fell out in the aisle.

"Q. Then he had two falls as it were, one up against the door and—  A. Yes, and then the next back out in the aisle.

"Q. Will you please state what (the) motions (of) the car and train were on that day at this time ?   A. I don't know that there was any unusual fast running.

"Q. What effect did it have on you when this occurred ? A. Nothing more than it shook me in the seat.   Shook me up against the end of the seat.  *  *  *

"Q. Was your attention called to the jerking of the train ? A. Yes, sir.

"Q. What called your attention to it ?   A. Nothing but the rocking of the train, and the fall of Mr. Rhodes."

The remaining witness of the plaintiff who testified to the movement of the train stated, that the train was running right rough that day.   It seemed to be running in a jerk, and that the jerking was unusual; that she had never before experienced such motion and movement on a car, but she admitted that she did not travel on railroads a great deal.

The uncontradicted evidence of the defendant was, that its roadbed at the place where the plaintiff was injured was on a curve, where there was necessarily more or less rocking or jerking of the train; that its roadbed and track at that point was in good condition, and the curve not excessive; that the locomotive and cars making up the train, and the appliances by which they were operated, were in good condition; that the engineer and other servants in charge of the train were experienced and skilled in the service in which they were engaged; that the train was running at its usual speed and was operated and managed in the usual way; and that there was no more rocking or jerking than usually and necessarily takes place in the running of the train.

The plaintiff offered no evidence to show that there was any defect in the train or the appliances by which it was operated, or in the construction of the road, or that there was any negligence or carelessness on the part of those in control of the train at the time of the injury—except the fact that he was injured under the circumstances disclosed by his evidence.

While a carrier of passengers is liable for injuries resulting from the slightest negligence on its part, it is not an insurer of their safety against all contingencies except those arising from the act of God and the public enemy as are carriers of goods.   For an injury happening to the person of a passenger without fault on the carrier's part it is not responsible.   As the law does not presume that anyone has been negligent, it is always necessary, in order to recover against a common carrier on that ground, to prove negligence, either directly or by evidence of facts from which it may be reasonably presumed.

In this case there is no direct proof of negligence, nor can negligence be reasonably presumed from the facts and circumstances disclosed by the record. It is a matter of common knowledge, as well as shown by the record, that trains or cars in passing rapidly over curves in the road, lurch, rock or swing, and that this is unavoidable. Railroad tracks cannot always be straight. The movement of trains is rapid, and the inevitable result is that the natural laws of motion cause the car to rock or swing or lurch as it passes over curves. This cannot be prevented and is one of the risks which a passenger assumes. See *Baltimore, &c.* v. *Cason,* 72 Md. 377, 380-1, 20 Atl. 113; *Byron* v. *Lynn,* 177 Miss. 303, 58 N. E. 1015; *Hill* v. *Metropolitan, &c. Co.,* 130 Mo. 132, 31 S. W. 262, 51 Am. St. Rep. 555; *Burr* v. *Penn. R. Co., supra.*

It is true that the plaintiff and one of his witnesses express the opinion that the rocking or lurching when the plaintiff was injured was unusual and extraordinary, but they testify to no facts which show that it was unusual or extraordinary. *Foley* v. *Boston, &c. R. Co.,* 193 Mass. 322, 79 N. E. 765, 766, 7 L. R. A. (N. S.) 1076. The mere fact that the plaintiff, who did not have hold of anything, was thrown or fell in the way he described does not show that the movement of the train was unusual. No one was to blame for the injury so far as the record shows. It was simply one of those unfortunate accidents which sometimes happen, for which the law holds no one responsible.

There being no evidence upon which to base the verdict, the trial court ought to have set it aside.

For this error, the judgment of the circuit court will be reversed, the verdict set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*