PEARL *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—PERSONAL INJURIES—NEGLIGENCE—QUESTION FOR JURY—DIRECTED VERDICT.

In an action against a street railway company for personal injuries to plaintiff, caused by defendant's street car colliding with a wagon in which plaintiff was riding, *held*, the evidence presented by plaintiff raised an issue for the jury.

2. SAME—TRIAL—INSTRUCTIONS—NEGLIGENCE.

An instruction by the court that it was the duty of the motorman operating the approaching car, when the plaintiff was crossing in full view, to operate the car so as to

avoid a collision with him, if possible, and if he did not do so, but collided with and injured plaintiff, then the defendant was guilty of negligence, was erroneous, as it held him to a higher degree of care than the law demands, and was misleading.

Error to Wayne; Codd, J.   Submitted June 21, 1915. (Docket No. 79.)   Decided September 28, 1915.

Case by Max Pearl against the Detroit United Railway for personal injuries.   Judgment for plaintiff. Defendant brings error.   Reversed.

*Corliss, Leete & Moody* (*Wm. G. Fitzpatrick,* of counsel), for appellant.

*Washington I. Robinson,* for appellee.

MOORE, J.   Plaintiff was driving a single horse and wagon east on Jefferson avenue west, in the vicinity of Solvay avenue, in the city of Detroit, about midday of the 10th of August, 1911.   Jefferson avenue runs east and west, and Solvay avenue north from the north side of Jefferson avenue.   Jefferson avenue is about 50 feet wide between curbs.   The defendant's double car tracks are located in the center of the street, leaving about 17 feet of highway on either side.   From the curbs to within a few inches of the rails on either side the street is paved; the space between the rails and between the tracks being unpaved, but filled in with broken stone.

Plaintiff claimed that, when he came to Solvay avenue, he undertook to turn north to go over both street car tracks, and before doing so looked to the west and saw a car a block or a block and a half distant, approaching the intersection.   At the same time he saw another car approaching from the east a block away. Thinking that he could cross the tracks, he turned his horse to the north.   Proceeding, his horse crossed the

east-bound or southerly track, the "devil" strip between both tracks, and got upon or between the rails of the northerly or west-bound track, when he suddenly became alarmed at the rapid approach of the west-bound car, and decided it was best not to undertake to complete the crossing ahead of it, and he started to turn to the right, intending to swing off to the southeast and get back upon the south side of Jefferson avenue. His wagon got stalled, and the east-bound car struck the rear of his wagon.

The defendant's claim and theory was and is that the plaintiff was proceeding east on or with the wheels of his wagon straddle the north rail of the northerly or west-bound track; that while in this situation he was observed by the motormen of both cars; that he was "in the clear" so far as the east-bound car was concerned; that when within 20 to 30 feet ahead of the east-bound car he suddenly, and without looking to the rear, turned his wagon to the right directly in the path of the car; that, despite all that could be done to prevent, the car struck the wagon about in the middle, or near the right front wheel. The motorman of the west-bound car, seeing the danger, stopped and just stepped out of the vestibule, when the wagon was thrown upon the left front corner of the vestibule, breaking the glass in the windows, and tearing the controller box loose. The plaintiff's wagon was demolished, his horse was injured so badly it had to be killed, and he was thrown to the ground under the car. His right foot and ankle were crushed, his toes so badly as to necessitate amputation.

The court overruled motions for a directed verdict on the plaintiff's evidence and on the whole evidence. The case went to the jury, who found for the plaintiff. A motion for a new trial was made and denied. The errors relied on are:

(1) The court should have directed a verdict.

(2) There was error in the charge of the court.

(3) The verdict was against the weight of the evidence.

1 and 3 may be considered together. Plaintiff offered evidence which, if believed, should carry the case to the jury. *Chauvin* v. *Railway*, 135 Mich. 85 (97 N. W. 160) ; *Ablard* v. *Railway*, 139 Mich. 248 (102 N. W. 741).

2. Was there error in the charge of the court? That part of it which is most criticised reads:

"It was the duty of the motorman operating the approaching car, when the plaintiff was crossing in full view, so as to avoid a collision with him—to operate the car so as to avoid a collision with him, if possible. If you find that the motorman of the car coming from the west did not do so, and by reason thereof collided with and injured the plaintiff, then I charge you that the defendant company, through the acts of its agent was guilty of negligence."

Counsel for appellee in reply to the criticism say:

" 'The charge of a court to a jury must be considered as a whole, not by isolated sentences, and a jury, as one of the tribunals of the country, must be presumed to have some sense. It is not allowable, in reviewing instructions to the jury, to consider particular sentences or phrases as if they were independent, but they must be construed with their context.' *Welch* v. *Ware*, 32 Mich. 78.

" 'The charge to the jury is to be construed together as a whole, and where a portion of it is complained of, which, standing alone, would bear a construction that might mislead the jury, the objection will not be sustained if, when considered with the rest of the charge, the jury would not be likely to put such a construction upon it, or to be misled by it.' "

—citing many cases, and insist the jury was not misled.

One trouble with this contention is that there is nothing in the other portions of the charge upon which to base it. The charge was quite long, and fully and

carefully stated the rights and duties of the plaintiff; but we have quoted all it said as to the duty of the motorman. We think it held him to a higher degree of care than the law demands and may have misled the jury. See *Rascher* v. *Railway Co.*, 90 Mich. 413 (51 N. W. 463, 30 Am. St. Rep. 447) ; *Chauvin* v. *Railway*, 135 Mich. 85 (97 N. W. 160) ; *Ablard* v. *Railway*, 139 Mich. 248 (102 N. W. 741).

The judgment is reversed, and a new trial ordered.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.